Our final case for oral argument is 25-7037, United States v. Underwood. You may commence. May it please the Court, good morning. I'm Neil Van Dalsom. I represent the appellant Bryant Underwood. I'd like to begin by addressing the application of 47OS section 11-1001. That is the statute that the district court relied upon to find that Deputy Wiles witnessed a violation of a traffic law as the basis for the stop. The record does not support a finding the Deputy Wiles saw a violation of that statute occur because the record establishes that this stop happened in a residence district and by its own terms the statute does not apply in a residence district. And residence is not defined either, right? Residence is its common meaning which would be a house. But in order to align whether or not the word residence corresponds to the property in question, isn't it best to look at pictures? That's one thing to look at and in this case... So looking at those pictures, it doesn't look like your neighborhood or your people are driving back and forth and the house is immediately next to each other and kids are being dropped off and it doesn't look like that. It looks like it's pretty rural. Rural is not the standard. The question of whether it's urban or rural or... Well that's not an epic word. It doesn't look like a residential area. Unimproved land is what the district court said. Unimproved land. What I would ask... I mean the magistrate termed it unimproved land which is not resident, primarily not residential. But what I would ask is that the court look at the definition itself. Yeah. And what the definition itself says is, converted to plain English, most of the property has been improved with a residence. No, it uses it much more specific. When the property on such 300 feet or more is in the main, improved with residence or residences and buildings in use for business or buildings in use for business. So it's the property on that highway and presumably that means the section of the highway we're dealing with here, not the entire highway, has 300 feet or more in the main, meaning primarily, I presume, improved with residences. And the district court didn't seem to me that anybody testified about this, but the district court said the way to determine that is to look at these aerial views that the state, the exhibits that they had with the aerial views and the officer specifically marked where he was on this aerial view on Chloe Lane. And the district court said specifically, referred to the 300 feet or more not being mainly occupied with residences or residences. Quite to the contrary, that section of Chloe Lane Road is mainly unimproved land. She says there's a couple of residences, but they're very far apart. She's very specific about what that shows. Now, I get that it doesn't seem that that's what the officer necessarily testified to, but the district court did make those very specific findings in conjunction with the definition. The definition of 300 feet. First, Your Honor, the testimony at the hearing was that Deputy Wiles was watching and saw a vehicle leave from a house, followed that vehicle past 20 to 30 houses. Right, but that's, we're talking about the 300 feet. I think that's the important part of the statute. The 300 feet would be the minimum amount of space. Right. If you're looking at an area that is less than 300 feet and it's improved, we've got this tiny parcel that standing alone is not improved. It's not a district. It's just a place with a house. I think the district court read that to mean the 300 feet essentially where this event occurred. I mean, I think you don't, let's say the statute, this particular road ran for five miles or ten miles. You don't look at the entire road to determine whether the entire road is a residential district. You're looking at this particular area here where the stop occurred. He put little X's on the map where the stop occurred and there were only a couple of residences very far apart in that area. I would say that if you look at the exhibit that is referenced, the entirety of that road on one side or the other is improved with the residents. What about that Living Trust property? Isn't that right in the area where the car was pulled over on one side? Yes. Look at the picture. What is there that's improved about that other than maybe they chopped down a few trees? Which trust property are you referring to? Stewart Property W Living Trust. Below the area where the, on the picture below where the stop happened? Right on the right. It's right on Chloe Road. We got the two X's and it's right next to it on the right. Casey Lane over to... On Chloe Lane on one side of all that property at that location is improved and if you keep going down the road... Wait a minute. Let's not divert to that. The Stewart Bobby W Living Trust is on the road right by where the car was pulled over, correct? Which exhibit are you looking at, Your Honor? I'm looking at one of the pictures. It's the, you can see the Stewart, you can read Stewart Bobby Living Trust on the blown-up aerial map. There's one that's blown up. Exhibit 7. Okay. May I grab Exhibit 7? Yeah. Okay. You may. Your Honor, I have a photo that does not, this one does not have that on there, but I can tell where you're talking about. So you can't tell me to confirm that the car was stopped on the road and one side of the road where it was stopped is the Stewart Bobby W Living Trust land? I can confirm that the property below on the photos where the stop happened does not have a residence. Right. Okay. All right. Well, that's kind of a yes. Yes. All right. Thank you. And the property on the top, just as the district court said, there are two residences very far apart next to the road, far apart and behind. One's behind and one's right there, certainly a long distance apart. And as the district court said, the statute requires that 300-feet area to be in the main, in the main residential. And she said two houses in the main on either side of the street in this large area is not in the main residential. So is that, was that clearly erroneous? I believe it is because the statute is referring to 300-feet or more. And you don't have to stop and say we're going to look at this 300-feet. Oh, do you think it should be anywhere on miles and miles of road or should it be where the stop occurred? If you continue going down the road and there continues to be property. Why would it be, I mean, if it's allowing you to make a, make, you know, if it's providing, that statute provides an offense that you, you know, in this case you can stop someone for this offense, for stopping in the middle of a road. Why would you look anywhere but where the stop occurred? Because that makes no sense at all. The statute is, is designating for an area, a district, what rules are going to control. If the entire area is residential, there are different traffic rules, different uses of the roadway, different expectations for what activities will take place. And it does not say 300-feet. You just look at the 300-feet. You look at 300-feet or more. The 300-feet requirement is merely indicating that if you've got one house out there by itself, that's not going to be good enough. So are you saying that I'm just not following, I guess. If the road is 10 miles long, which it might be, and we can look for any 300-feet or more anywhere on the road, but it doesn't matter if it's the area where the stop occurred is not residential. We can look down the road a few miles and it's residential in that area, for 300-feet. Not if there's a huge break or you have even a small break. That's not what the statute, how it reads to me, but I think I understand your argument. Okay. Let's assume that I agree with you that this is not a residential district and that the magistrate judge was wrong and that Officer Wiles was wrong. We have some cases that suggest an incorrect but reasonable mistake of fact can still justify reasonable suspicion to stop the vehicle. Why wouldn't this fact pattern be a reasonable mistake of fact that would at least permit the traffic stop even if it turns out the officer was wrong about that? The officer did not stop this vehicle because of a violation of the statute. The record does not support a finding that, oh, I was confused about whether or not this was in a residence district. If you listen to Defendant's Exhibit 2 at page 2950 to a little after 30 minutes, this is 30 minutes into the investigation and Deputy Wiles says, I don't have anything on the driver. Is she valid? 30 minutes in, he's trying to figure out something that she's done wrong. He's trying to, they eventually landed on 1001 as the potential violation, and they can do that, can't they? I don't follow the 1001. What, oh, 11-1001, that's your residential district. They did not settle on that. They did not give her a ticket. They did not issue her a warning. What they took her to jail over was that she got into an argument with the officer, and he said, well, I'm taking you to jail and saying that the stuff in the car is yours. Well, that doesn't mean that he didn't have reasonable suspicion and can't cite this statute as a basis for reasonable suspicion. He didn't have to actually arrest her for it. He never did cite the statute. He didn't have to. I mean, you don't have to. If the issue is, did this officer have a mistake about the law, then I think it's reasonable to ask, did he identify this statute as the reason he stopped the car? And he didn't. There's no evidence that that was his thought process. And in fact, he's out there at the scene 30 minutes after he stopped the car trying to figure out what violation he has on her, and he doesn't have any. So he's asking, does she have a valid driver's license? Could we get her on that? But we don't look at his subjective motivations, right? I think you do if the question is, is this a reasonable mistake of law? Because I think you've got to have a mistake of law to trigger that. The mistake of law, at that point, becomes part of the fact pattern. Just like a reasonable mistake of fact, you couldn't say, well, I stopped that guy because I thought he was a suspect, but I didn't. But some other officer might have made that mistake. Do you have any authority that says, in certain special circumstances, the subjective intent of the officer is pertinent at all? What I have is the reality that the Hein rule has only been applied to actual mistakes. And so if the court says, OK, after thinking about it, Van Dalsum's got a point. This is supposed to be a resident district. The statute wasn't violated. Then if the question becomes, well, can we still justify the stop based upon an officer being confused about the law? I think it's incumbent that there be a mistake about the law. OK, but you address that by means of the reasonable officer rather than the subjective view of the officer in question. And my response to that is no reasonable officer could say that I drove past 20 houses through a residential area, stopped it because I was concerned about this activity in a residential area, but didn't think this was a residential area. Would you get back to my original question? Do you have any authority that indicates where we're looking at reasonable articulable suspicion that the subjective intent or view of the arresting officer is at all pertinent? Not outside of the context of mistakes. And in the mistake case, you're saying the specific intent of the arresting officer is pertinent and you have authority for that? That is what the courts have done. That is what the Supreme Court did. Just give me a site. Give me a name. In Hine. All of those cases, the analysis of the reasonable mistake of law or fact is triggered by some evidence that there was a mistake. You're talking about Hine in the Supreme Court? Yes. I am looking at it and it says searches and seizures based on mistakes of fact can be reasonable. Correct. Is your distinction that it would be an objective test for that and a subjective test for a mistake of law? The objective test is to figure out whether this is a reasonable or unreasonable mistake. But you don't do that analysis unless there is an actual mistake. Otherwise, we have a standard of, well, what could somebody think but didn't think as the basis for a stop? Well, I think, I understand the confusion here based on the officer's testimony because he never seemed to, I don't think there were any questions asked of him whether he believed this to be a residential district or anything else because the fact is this wasn't the basis for the stop, which doesn't matter. And what he did was just describe, you know, the road he drove along and the houses. And then he put a picture, he drew on the picture where it actually happened, so the area around it. And there's this aerial view. But my impression was they didn't ask him about whether he thought it was or wasn't a residential district because that wasn't the basis for the stop, frankly. It's the basis they're saying now offers a reasonable suspicion and a reasonable basis for the stop. And that's okay. You see what I'm saying? I see the reason for your confusion. But I don't think the officer ever said one way or the other whether he made a mistake or not because he really wasn't thinking about the statute at all. He merely described the area and then showed where it was. And then it looked to me like the state used this aerial view to say, hey, you can look at this and you can see that it doesn't meet the requirements, at least under the statute of a residential district. And that's what the district court said. She said, I can, the evidence that I'm going to look to, to see if there's support for their basis for a reasonable suspicion statute, the evidence I'm going to look to is the aerial view and where the stop occurred according to the officer. So I get your confusion based on his testimony, but I don't think he really testified one way or the other about this statute or whether he thought one thing or another about it because apparently he didn't. He testified that there's 20 to 30 houses up and down it. It's primarily residential. Well, he also said things like, that to me would, about the road right where it happened, it's a gravel road with potholes everywhere, no painted lines or shoulder, brush growing on either side. It's a, you know, he described it as a, you know, also described it as sort of a country area. So to me his testimony was just a description of the road and a description of the road as he drove along it. And yes, there are, much further away, there are some houses, but not in the area where he was. The road is not, it's, you know, I can't tell how long. There's also no testimony about distances. The district court relied on Defendant's Exhibit 9. And what I would point out is that what matters under the statute is, has a parcel of land been improved with a residence? Not what's the road, the condition of the road, not is it rural, not how far apart or how large are these parcels. And if you go down that road from where they started to where they ended, there's not a single point that you would not be next to property that has a residence on it. It's residences somewhere to the left or the right and often on both sides, the entire way. That's a more than 300 feet section that is, in the main, improved with residences. It's not a rural-urban distinction. It's a land use requirement. It's a construction requirement. And that's why the district court was mistaken to look at a photo and say, well, this kind of looks rural, so it's not a residence district, because that is not what is relevant under the statutory definition. I think your time has expired. I appreciate the argument. Mr. Lehman, you're back. May it please the court. Jared Lehman on behalf of the United States. It was very difficult for me to kind of wrap my brain around what the standard of review is, what is the court's job, the appellate court's job in reviewing reasonable suspicion. And I think what I've landed on is it is a purely objective analysis. The police officer on scene provides us with the facts. Here's what the defendant did. Here's what I observed. And then we have to take those facts under an objective standard and determine whether a stop was supported by reasonable suspicion. And I'll point the court to two different cases. First, we start with the Supreme Court case in Wren, which is a 1996 case. And then this court in 1998 decided United States v. Galando, G-A-L-I-N-D-O, Gonzalez, 142 F. 3rd, 1217, 10th Circuit, 1998. And what this court held in that 1998 decision was the court's analysis of objective reasonableness is not limited by an officer's own account of his motivation. So what facts do we have? We have a car that stopped in the middle of the road. Full stop. That's what we're dealing with here. Objectively, could a car stopping in the middle of the road support reasonable suspicion for that officer to stop that driver and investigate further to determine whether a criminal offense occurred or even whether a criminal offense didn't occur? And that's exactly what the officer had to do in this instance. The officer had to stop the driver of the vehicle to find out what's going on. Candidly, this statute is a mess. It is remarkably hard to follow. It is just absolutely a mess. It's going to take him eyeballing, okay, the motorist stopped here, and it's about a football field link to the nearest house, so maybe I'm in a residence district, maybe I'm not. I might need to get a tape measure out and walk. There's a lot of investigation that needs to go into this. But at a minimum, it's going to start with a stop, a seizure, if you will, because the car stopped in the middle of the road. Now, interestingly, this statute, 47 OS 11-1001 sub A, goes on. Unfortunately, throughout the district court level, we only talked about the first part of the sentence, but it continues. But in every event, an unobstructed width of the highway opposite a standing vehicle shall be left for the free passage of other vehicles, and a clear view of such stop vehicles shall be available. No matter what, residence district, business district, not residence district, not business district, we have to pull over as far as we possibly can to allow traffic to travel freely on the other side. It matters not whether we're in a residence district. Further, even if we aren't in a residence district and it mattered that we were in a residence district, is it reasonable for the officer to have thought that a crime might have occurred? And the answer is yes. And that's all that this case is about. Someone stopped in the middle of the road, and it's reasonable for that officer to have believed that a criminal offense was committed. Well, the confusing part of this case, though, is that the officer did testify at this present hearing, and he did talk about the fact that there were 20 or 30 houses on either side of it, which there probably were all along the road, but not according to this aerial map. And so, how was that presented to the trial court? I mean, to the magistrate judge, who eventually doesn't even talk about the officer's testimony. She only talks about the aerial map. I would direct this court... It's kind of an unusual situation that we have here. It is. I would direct this court to a couple of things in the report and recommendation from the magistrate, and then in the final order from the district court itself. And there, they talk about what really matters is the reasonable suspicion of the officer. And that's really the thing that we're here to decide, is did the officer have reasonable suspicion? Yeah, I get that. I saw that. But I see the confusion here, and it seems that maybe the state presented some inconsistent evidence in terms of the testimonial evidence versus the aerial evidence. And yet the magistrate didn't address that. And neither did the district court. I still don't know that it amounts to any sort of error for that to have happened. I don't know either. I'm trying to figure that out. It just simply doesn't matter that they were confused on that issue because they got the ultimate issue right, and that is there was reasonable suspicion. Based on the objective criteria, there was a stop. I presume that the prosecutor who handled the suppression hearing was arguing this particular statute and presumably was the same person examining this officer. And yet there's no, it's like there's no cross between the aerial map and what the district court found and the magistrate found and what this cross-examination was. As I recall the record, the government examined the witness as to what were your reasons for the stop, and the witness said, I saw him stop in the middle of the road, plus I was doing surveillance on possible drug trafficking, etc. Yeah, I'm talking about his description of the road, which is what we have to look to in terms of was it a residential district. And that part seems possibly, possibly inconsistent with the aerial map. I don't know that the witness, in fact I do know that the witness was not put to the ultimate question of is this a residence district within the legal meaning of Title 47 of the Oakland Statute. Right, I don't think there was anything like that. So is it a residential area, I believe was the term of art that they used in the suppression hearing. And that's just an unfortunate term of art that got used in that hearing instead of the legal terminology from within Title 47. What's the 300, can you explain the 300 feet to me? I'm kind of confused by that. Your Honor, regrettably I'm equally as confused. Again, this statute could not, I hate to be critical of the state legislature, but this statute is just terribly constructed. If you read it strictly, you could have an area of 300 continuous feet where you have a residence district, and then you have a small cow pasture, and that's not a residence district, for 301 feet, and then you could have another residence district for another 100 feet because there's two houses there, and they're just large acreage houses. It's just impossible to put all of this together as to what it means. And so interestingly enough, I think that feeds right into Hine v. North Carolina, the Supreme Court case that says, listen, even if the officer was mistaken, given the convoluted nature of how these statutes all work together and how it's extremely hard to even get a determination on what these mean, I think that if the officer was factually mistaken, Hine supports the finding that that was reasonable. Well, that doesn't really apply here because we don't even have an officer that even knew about this statute or is suggesting that, I mean, it doesn't make much sense here when we don't have, when we're basically concocting a reasonable suspicion, a basis for reasonable suspicion after the fact. Right, Your Honor. It just doesn't, the mistake doesn't work. Even if it doesn't work, we still go back to factually a car stopped in the middle of the road. Was it reasonable to believe that a crime occurred? The answer is yes, Your Honor. Well, your problem is, you know, we're backing into, you know, it seems like it was stop first and justify later. And, you know, the case law to some extent permits that. So you're back, you know, you're scurrying through the code. What do we have that might work? And then, you know, okay, there's this statute. This one does work, but, you know, you've got to get the witness to, you know, give us the factual background to make it work. Even under a traditional reasonable suspicion stop outside of a verifiable traffic violation, the facts and the records support the following. It's after 11 p.m. at night. So you're saying even without 101, there was still reasonable suspicion? Yes, Your Honor. Yeah, when you look at the totality of the circumstances, the building blocks to reasonable suspicion, the late hour, the fact that the police have suspected drug activity in the area, they're doing surveillance actively on that drug activity. This officer just isn't on routine patrol. He's surveilling what he believes to be a drug. I didn't think you used that in your briefing as a basis for reasonable suspicion. I think you used it was high crime area and it was late at night. I mean, I don't think you said that, you know, because you're surveilling this person for. Correct, which would make it. That push it. But which would make it part. So the surveillance in and of itself, just because an officer is doing surveillance somewhere, doesn't mean that that's reasonable suspicion. You know, I saw you when I was doing surveillance. But the fact that it was surveillance in a suspected drug trafficking area, I saw this stop happen at 11 o'clock at night in a suspected drug trafficking area. This whole, this whole. That doesn't really fit with this whole idea. But being this is not a residential district and being not a business district, but being undeveloped land, it just doesn't sound like, you know, your normal high crime area. Well, Oklahoma, especially. Undeveloped land. Your Honor. High crime area, country road. Your Honor, the Eastern District of Oklahoma is a remarkably rural area. I don't know about that. I'll represent to the court that it is. We do not have a commercial airport, for example. All that being said, Your Honor, there's more to the traditional reasonable suspicion argument. We have the drug trafficking area. We have the stop at dark. This isn't a place where pedestrians would be. There's not really a reason to be stopping in the middle of the road and letting pedestrians in and out. Well, there was a driveway there. Correct. There was a residence. Correct. So if you were going to drop pedestrians. I don't know why that would be that unusual. Right. Well, if you're going to drop pedestrians off, you would use the driveway. This is a very dark. Well, the officer wasn't even consistent. He said it was either two people getting out or one person getting in. I think ultimately he lands on the fact that two people got out. I think the magistrate landed on that, but I didn't see that in the testimony. With respect, Your Honor, I would refer the court to the officer's written report. Yeah. Well, it's inconsistent with his at-the-time report. Sure. He does make an excited utterance on scene in his body camera. But later on when he writes his report and then testifies at the suppression hearing, he's very clear. Two people. I don't want to misspeak. I can't even remember now if it's got out or got in. He says two people get out, but he's at a driveway. I'm not sure why that's so suspicious. Well, regardless, when you put all of those things together, Your Honor, I think that the reasonable, suspicious analysis survives any sort of scrutiny that we could give. We have a stop in the middle of the road, late at night. Pedestrians where pedestrians probably shouldn't be. There's reported drug trafficking in the area. So this is, honestly, I think a very justifiable stop by the police officer. If there's no more questions, I would ask the court to affirm the defendant's conviction and sentence. Thank you, counsel. Counsel is accused.